[Cite as *State v. Smith*, 2012-Ohio-113.]

## IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### GREENE   COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 2010-CA-80 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 08-CR-926 |
| v. | : | |
| | : | |
| SHELDON SMITH | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 13th day of January, 2012.

. . . . . . . . .

STEPHEN K. HALLER, Atty. Reg. #0009172, and ELIZABETH A. ELLIS, Atty. Reg. #0074332, Greene County Prosecutor's Office, 61 Greene Street, Xenia, Ohio 45385.
Attorneys for Plaintiff-Appellee

SHELDON SMITH, Inmate #A617-224, Chillicothe Correctional Institution, Post Office Box 5500, Chillicothe, Ohio 45601
Defendant-Appellant, *pro se*

. . . . . . . . .

HALL, J.

Sheldon Smith appeals pro se from the trial court's denial of his R.C. 2953.21 motion for post-conviction relief.

In his sole assignment of error, Smith contends the trial court erred in denying

his motion on the basis that his claims were barred by res judicata.

On May 27, 2009, a search warrant was obtained to search the defendant's residence at 2936 Louisiana Drive in Xenia, Ohio. The defendant was seen leaving his place of business known as the L.A. Sports Bar and Grill in a vehicle driven by Donald Harrington. (Suppression hearing transcript, April 23, 2009, at 12.) Detectives contacted Smith when the vehicle stopped at a fast-food establishment. The defendant voluntarily accompanied the detectives to the Louisiana Drive location where thirteen kilograms of cocaine and a large quantity of cash, later determined to be almost $600,000, were located. (Id. at 46-47.)   Smith was advised of his *Miranda* rights and waived them. (Id. at 21-25.) He showed the detectives where the drugs and money were located. According to one of the detectives, Smith said, "'You can't miss it. It's downstairs.' * * * [I]t was all over the downstairs recreational room floor." (Id. at 20). Smith began cooperating with the investigators. Later that day, he directed authorities to an additional forty-two kilograms  of cocaine at a "stash" house that he rented, and those drugs too were part of his drug enterprise. (Transcript of proceedings, August 20, 2009, at 213, 218.) Smith entered a no-contest plea to numerous drug-related charges on June 1, 2009. Sentencing was delayed while the court conducted hearings unrelated to this appeal.

On October 2, 2009, counsel for the defendant filed a "Request for Leave" to reopen the motion to suppress. (Doc. #93). That filing states, in part: "Defendant states that there has been new (sic) discovered evidence which will demonstrate that material statements within the affidavit [for the search warrant] are false thus rendering the warrant invalid." (Id. at 1). A motion to vacate the defendant's plea was

filed at the same time based on the same arguments. (Doc. #92). The memorandum in support of that motion specifically refers to information in the search-warrant affidavit attributed to one Reginald "Tuffy" Brooks. On October 28, 2009, a supplement to the October 2, 2009  motions was filed. (Doc. #95). Attached to that filing is a copy of an ACE (Greene County **A**gencies for **C**ombined **E**nforcement) task force report of the investigation, which is the same report Smith attached to his petition for post-conviction relief. In response to those October 2, 2009 motions, the court conducted a hearing and spent considerable time with counsel, and in camera, to review audio recordings of conversations involving Brooks. The trial court determined that  "affiant's statements in the search warrant are an accurate recitation of the conversations recorded." (Doc. #100 at 2). The request to reopen the motion to suppress, based on allegations of false information submitted by the detective as supplied by Reginald Brooks, was denied. (Id.).

The matter was set for disposition on October 30, 2009. The trial court imposed an aggregate sentence of twenty years in prison. On direct appeal, this court affirmed. See *State v. Smith*, Greene App. No. 2009-CA-81, 2010-Ohio-6229.

Smith filed the present post-conviction relief action on July 7, 2010, raising several arguments.[1] (Doc. #124). The petition alleged that it "centers around an Ineffective Assistance of Counsel Claims, of events that happen (sic) outside of Trial Court Records."  The petition stated three claims: (1) that trial counsel did not bring to the court's attention the investigative report indicating that the ACE task force

---

[1]In addition to Smith's pro-se filing, the record contains a petition for post-conviction relief filed by counsel on Smith's behalf. (Doc. #125). Counsel's petition later was withdrawn, leaving only Smith's pro se filing. (Doc. #142).

would not work with Tuffy Brooks because of Brooks' criminal history, (2) that trial counsel failed to advise the defendant of his right to have a jury trial on a forfeiture issue, and (3) that there were several other issues but because of time Smith would file an amendment. Although the second page of the defendant's filing is notarized, it is effectively a notarized legal argument and does not specify if it is based on personal knowledge. Nor does it set forth that the facts would be admissible in evidence or demonstrate that the defendant is competent to testify to the facts, all of which are required for the filing to be considered as evidence in response to a motion for summary judgment.

On July 20, 2010, Smith filed a motion to amend, seeking to add additional arguments. In that filing, the defendant renewed his argument that there was evidence that "Tuffy" Brooks was not a credible source for the search-warrant affidavit. The defendant also raised a new argument that the search-warrant affidavit was based on false information because the facts attributed to CS # 3, admitted by the State to be Carlos Anderson, are denied by an affidavit of Carlos Anderson attached to the motion to amend. (Doc. #130).

The State opposed post-conviction relief, as well as the motion to amend, and moved for summary judgment. Following briefing, the trial court sustained the State's motion for summary judgment and denied Smith post-conviction relief. Although the trial court did not explicitly rule on Smith's motion to amend his post-conviction relief filing, it implicitly granted the motion by addressing his additional arguments in its November 23, 2010 judgment entry. Therein, the trial court stated, in relevant part:

"In the instant case, the Defendant is seeking post-conviction relief on the

following grounds:

"(1). Trial Counsel failed to bring to the court's attention by way of a police report that Reginald 'Tuffy' Brooks had made contact with Det. Fred Meadows in an effort to secure a favor for Tony Thomas. Also, trial counsel failed to bring to the court's attention that Dir. Bruce May refused to work with Tuffy Brooks due to Tuffy's criminal history and the fact that Tuffy was being investigated for murder and other crimes.

"(2). Trial Counsel failed to advise Defendant about his rights in the forfeiture phase of sentencing.

"(3). Trial Counsel never filed any petition with the Trial Court in regards to the forfeiture of his property.

"(4). Police Misconduct in the use of confidential sources in obtainment of search warrant; and

"(5). Trial Counsel failed to call any of the 4 men to testify during Defendant's suppression hearing.

"Defendant's petition raises no substantive ground for relief because the claims he advances are barred by res judicata. The alleged claims raised by Defendant were or could have been addressed at trial and therefore could have been raised on direct appeal. Also, the facts alleged and presented by Defendant, if proved, do not entitle him to relief sought." (Doc.#143 at 4).

On appeal, Smith contends the trial court erred in denying his motion for post-conviction relief on the basis of res judicata and without an evidentiary hearing. Although Smith's pro-se brief touches on a range of issues, his appellate argument

focuses on the fourth ground for relief cited by the trial court: police misconduct in the use of confidential sources to obtain a search warrant.[2] There are two parts to his police-misconduct argument. First, the defendant reiterates that the information from Reginald "Tuffy" Brooks is not credible because the task force previously had been unwilling to work with Brooks. Second, Smith claims the affiant, detective Craig Polston, lied in his search-warrant affidavit about having obtained key information from a confidential source identified as "CS #3."

We note that the defendant has not provided any new or different factual information about Tuffy Brooks. His lawyers previously challenged both Brooks' veracity and the accuracy of the detective's inclusion of statements attributed to Brooks in the search-warrant affidavit. Moreover, the trial court went to considerable length to listen to the audio recordings of Brooks when Brooks did not know that he was being recorded. There can be no doubt, from the search-warrant affidavit itself, that Reginald Brooks is a burglar, thief, and robber. But these issues were fully addressed to and by the trial court. Brooks' lack of credibility was argued to this court in the defendant's direct appeal. We agree with the trial court that res judicata prevents the appellant from re-litigating the issue.

The second part of appellant's police-misconduct argument involves detective

---

[2] Appellant does not renew his argument to the trial court that he had been denied a jury trial on the forfeiture proceedings or that he was misinformed of his right to a jury trial on that issue. Nevertheless, a jury waiver was filed that is signed by counsel and countersigned by the defendant. (Doc #53). A "Rule 11 notification and Waiver for No Contest Plea," signed by the defendant, also states that he is waiving his right to a jury trial. (Doc. #60). Finally, the indictment contained forty forfeiture specifications. On October 30, 2009, a forfeiture hearing began but after some twenty pages of transcript testimony a recess was taken. Upon resuming, the state and the defense entered into an agreement. Some of the items were to be forfeited and some were to be returned to the defendant's mother. Thus, the defendant has waived any right to have a jury determine the forfeiture. Likewise, he did not raise the issue on direct appeal.

Polston's search-warrant affidavit, which states at paragraph seventeen:

"On May 23, 2008 an interview was conducted by Detectives Lon Etchison and Josh Julian, ACE Task Force[,] with a confidential source, hereafter referred to as CS #3. * * * CS #3 stated that [Donald] Harrington works at the L.A. Lounge for Sheldon Smith and also sells quantities of cocaine for Sheldon Smith. CS #3 informed the detective that the cocaine found at 1152 Glover Drive was delivered to Carlos Anderson at the L.A. Lounge parking lot by Donald Harrington. Harrington took the quantity of cocaine from a vehicle owned by Sheldon Smith that was described as an older green four door vehicle. CS #3 told the detectives that Harrington was familiar with Smith's drug trafficking business from working at L.A. Lounge and Smith had been Harrington's boss since the L.A. Lounge opened. CS #3 told the detectives that after receiving the money for the cocaine Harrington took the money and placed it back in the green vehicle. CS #3 stated he/she purchased cocaine from Harrington numerous times at the L.A. Lounge and Harrington would always remove the cocaine from the vehicle and place the money back in the back seat or trunk area of the green vehicle. Harrington has told CS #3 that he has seen several hundred thousand dollars of U.S. currency and kilograms of cocaine at the residence of Sheldon Smith in Xenia. Harrington bragged to CS #3 that Smith obtains fifty to sixty kilograms of cocaine from his Mexican connection each month. * * *."

In the proceedings below, Smith moved to suppress evidence obtained as the result of a warrant that was issued based on Polston's affidavit. Arguing against suppression, but after completion of the evidentiary hearing, the State suggested to

the trial court that CS #3 was "none other than Carlos Anderson." (Doc. #32 at 10, filed May 7, 2009). On direct appeal, this court upheld the trial court's denial of Smith's motion to suppress. In so doing, this court relied, in part, on the information police had obtained from CS #3, reasoning:

"With regard to CS 3, he admitted to police that he had purchased cocaine from Donald Harrington numerous times, thereby making a statement against his penal interests and adding to his reliability. CS 3 also told police that Harrington sold drugs for Sheldon Smith out of the L.A. Lounge. His basis for knowing this information presumably came from his prior purchases of cocaine from Harrington. CS 3 additionally stated that Harrington always put the money in an older green vehicle owned by Smith. Police independently confirmed that Smith owned a green 1992 Honda Accord, which helped to corroborate CS 3's claim. Police also established that Smith's mother was the president of the L.A. Lounge and owned its liquor license. CS 3 further told police that Harrington had admitted seeing several hundred thousand dollars in cash and kilograms of cocaine in Smith's residence. Harrington also told CS 3 that Smith obtains fifty to sixty kilograms of cocaine each month. CS 3 knew this information because Harrington told him, and Harrington presumably knew it because he sold drugs to CS 3 and others for Smith. Although CS 3 did not indicate when Harrington had seen the money and kilograms of cocaine in Smith's residence, we find it noteworthy that Harrington bragged to CS 3 about Smith receiving fifty to sixty kilograms of cocaine each month. The substantial size and regularity of this delivery gave the magistrate a reasonable basis for concluding that drugs remained present in Smith's home at the time of the warrant request."

To put the facts related in paragraph seventeen of the affidavit in perspective, examination of other   facts is necessary. A fair reading of the entire record reveals that it is undisputed that Donald Harrington worked for Sheldon Smith at the L.A. lounge. The defendant himself provided information that led to the issuance of a search warrant for the 1549 East Main Street address in Xenia where an additional forty-two kilograms of the defendant's cocaine were located. The defendant's information was listed in the affidavit for the 1549 East Main Street warrant, at ¶ 22, as being from confidential source #4. (State Exhibit 4, suppression hearing, April 23, 2009.) Thus, it was Sheldon Smith, himself, who admitted to detectives that for over a year he was distributing between twenty-five and fifty kilograms of cocaine a month that he obtained from several Hispanic males. (State's Exhibit 4, at ¶22) Moreover, Carlos Anderson was known to be a drug trafficker before detectives searched Smith's home. (Transcript of proceedings, September 16, 2009, at 41.) Three hundred grams of cocaine were found in Anderson's house. (Search warrant affidavit, at  ¶16).  Donald Harrington admitted to being a significant drug trafficker. (Transcript of Proceedings September 16, 2009,  at 44.) In an interview with authorities on July 1, 2008, Sheldon Smith identified a picture of Carlos Anderson. (Id. 53). Anderson was convicted of drug dealing. (Id. at 53-54). Smith admitted that Donald Harrington was involved with at least five kilograms of his cocaine. (Id. at 63). The net result of this undisputed or admitted information is that Smith was a major drug dealer, Harrington worked for Smith, Harrington was part of Smith's drug distribution network, and Carlos Anderson was an admitted drug trafficker.

In the January 13, 2010 affidavit accompanying Smith's post-conviction relief

filings, Carlos Anderson averred:

"I Carlos Anderson, depose the following to be true under the penalty of Perjury of the Laws of the State of Ohio;

"1) I have never been a Confidential Informant, or worked with The Xenia Police Department, Task Force, or any other Law Police Department, Local, or Federal.

"2) I have never given an interview to a Detective Lon Etchison or Josh Julian of Ace Task Force, on 5/23/2008, giving them information on Sheldon Smith.

"3) I have no knowledge of any Sheldon Smith, business dealings, or personal dealings.

"4) I have recently come into the knowledge that I was listed as CS #3 (CONFIDENTIAL SOURCE), [i]n a[n] Affidavit for Search Warrant, taken out by Det. Craig Polston, to search a property listed as: 2396 Louisiana Drive Xenia (Greene County), Ohio, which is not true. Said statements [were] used to secure a search warrant of the above listed property.

"5) My name was revealed as CS #3, during a suppression hearing, when my name was turned over by the State of Ohio, as a Confidential Source. (Which is totally untrue)."

(Anderson affidavit, attached to Doc. #130).

Anderson's affidavit does not deny the underlying factual information that the detective included in the application for the search warrant. It just denies that he is the source of that information. Nor does the defendant independently supply factual information of his own denying that he was a major drug dealer with a Mexican

connection, or that Donald Harrington worked for him and was involved in Smith's drug-distribution network, or that Harrington had seen several hundred thousand dollars of currency and kilograms of cocaine at Smith's residence. There is a reason he has not denied those facts. They are true. Almost $600,000 and thirteen kilograms of cocaine were found in Smith's residence. "Throughout the month of May 2008, Sheldon Smith conspired with Donald Harrington on at least two separate occasions to arrange the sale of multiple kilograms of cocaine to Carlos Anderson." (Rendition of Facts, Transcript of No-Contest Plea, June 1, 2009, at 21).[3] "Two nearly (sic) years Sheldon Smith received hundreds of kilograms of cocaine from his drug suppliers and he would use a network of people to distribute that cocaine. Those people include, but not limited to, Donald Harrington and Carlos Anderson." (Id. at 23.) "Throughout the month of May 2008, Sheldon Smith conspired with Donald Harrington on at least two separate occasions to arrange the sale of multiple kilograms of cocaine to Carlos Anderson.* * * The proceeds of those cocaine sales were returned to Shelton (sic) Smith." (Id. at 22-23.) This leads to the inescapable conclusion that either detective Craig Polston, the affiant, was informed of the facts in paragraph seventeen of the search-warrant affidavit by CS#3 or he is clairvoyant and able to predict specific, multiple facts that were later found to be accurate.

A singular question remains: was Carlos Anderson CS #3? Regardless of the answer to this question, however, Anderson's affidavit fails to provide Smith with

_____

[3] We realize that "a statement of facts by a prosecutor does not constitute evidence." *State v. Green*, 81 Ohio St.3d 100, 104, 1998-Ohio-454. However *Green* and its progeny deal with a situation where evidence is required to have been introduced. We use the rendition of facts only to highlight that the defendant has not provided evidence to contradict the drug dealing aspects of paragraph seventeen because that information is accurate.

grounds for post-conviction relief. If Anderson provided the information attributable to CS #3, but he now denies it, then his affidavit is false and unhelpful to Smith. On the other hand, if Anderson was not CS #3, then his affidavit is true but still unhelpful. If CS #3 was not Anderson, this does not undermine the factual information contained in detective Polston's affidavit or the reliability of that information, which was largely corroborated and ultimately proved to be accurate. If Anderson was not CS #3, then someone other than Anderson provided the information upon which Polston relied. The only argument Smith can make that could lead to the conclusion that Polston provided false information in the affidavit is if one were to speculate that Polston made up the accurate information that he, Polston, attributed to Anderson, but that the information was not provided by Anderson. The trial court was not required to believe in mythology or clairvoyance. Because Anderson's affidavit does not controvert the underlying factual information in Polston's search-warrant affidavit, the trial court correctly held that "the facts alleged and presented by Defendant, if proved, do not entitle him to [the] relief sought."[4] For this reason, and regardless of the true identity of CS #3, we continue to believe that Polston's affidavit was sufficient to support the issuance of a search warrant and the trial court did not abuse its discretion in overruling the motion for post conviction relief. Accordingly,

---

[4]Parenthetically, we reject the notion that res judicata precludes Smith's reliance on Anderson's affidavit. The affidavit is dated January 13, 2010, and was not part of the original record below. We see no indication in the record that Smith could have raised the issues presented by Anderson's affidavit without it. Because Anderson's affidavit is outside the record, the trial court erred in denying this aspect of Smith's motion for post-conviction relief on the basis of res judicata. See, e.g., *State v. Harris*, Champaign App. No. 07-CA-32, 2008-Ohio-5165, ¶7 (recognizing that res judicata only bars post-conviction claims that were or could have been raised at trial or on direct appeal). As set forth above, however, the trial court properly denied Smith's R.C. 2953.21 motion on the alternative basis that Anderson's affidavit did not provide substantive grounds for relief.

Smith's assignment of error is overruled.

Judgment affirmed.

. . . . . . . . . . . . . .

FAIN, J., concurs.

GRADY, P.J. concurs in judgment only.

Copies mailed to:

Stephen K. Haller
Elizabeth A. Ellis
Sheldon Smith
Hon. Stephen Wolaver